UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Docket No. 18-CR-10468-NMG |
| v. ) | |
| ) | |
| JOSEPH GREENE ) | |
| ) | |

### DEFENDANT JOSEPH GREENE'S SENTENCING MEMORANDUM

Defendant Joseph Greene, by and through his undersigned attorney, hereby submits the following memorandum for the Court's consideration at his sentencing in the above-captioned matter, currently scheduled for June 15, 2020 at 11:00 a.m.  As explained in further detail below, Mr. Greene respectfully submits that, after consideration of the relevant factors under 18 U.S.C. § 3553(a), a sentence of three years of supervised release would be sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.  Such a sentence would allow Mr. Greene to continue to build upon the substantial and significant personal progress he has already made over the past year as a participant and recent graduate of this Court's R.I.S.E. Program.  While Mr. Greene's progress towards rebuilding his life is not yet complete, he is increasingly confident that he is on a path to becoming a healthy and productive citizen.  The proposed sentence of three years of supervised release would help him to continue his efforts to achieve that important goal.

### MR. GREENE'S PERSONAL HISTORY

Mr. Greene's personal background is summarized in the Pre-Sentence Report ("PSR").  *See* PSR ¶¶ 48-85.  Born in Boston, Massachusetts on October 23, 1997, Mr. Greene was one of two children born from the marital union of John Richie Greene and Sandra Greene.  *Id.* ¶ 48.

1

When Mr. Greene was only six months old, his mother was killed in an automobile accident. *Id.* Thereafter, he was largely raised by his father's sister, Kerry Greene, with assistance from both his father and his paternal grandmother. *Id.* Mr. Greene remains extraordinarily close to his aunt today—as she embraced the role as the "mother figure in his life." *See* Letters of Support (filed concurrently) at Exhibit A (letter from Kerry Greene); *see also* PSR ¶¶ 52, 56. For Mr. Greene's entire life, the family has resided in Stoughton, Massachusetts. *Id.* ¶¶ 48-49.

The tragic beginning to Mr. Greene's life was compounded by a series of other traumatic events that he endured throughout his childhood, all of which are discussed in greater detail in his PSR. *Id.* ¶ 48. While he received consistent and steady love and support from his family, those traumas were compounded by a series of family deaths that occurred during his teenage years, including the deaths of a nephew in 2015, his paternal grandmother in 2016, and his father in 2017. *Id*. Mr. Greene also suffered from learning difficulties during his high school years, and was periodically assigned to specialized classes. *Id.* ¶ 74. Although never diagnosed with any specific mental health condition, Mr. Greene did receive some counseling at school due to behavioral problems relating to anger management. *Id.* ¶ 62. His first significant experience with counseling has been in connection with his pretrial experience in this case. *Id.*[1]

Perhaps due in part to the various traumas he experienced during his childhood and teenage years, commencing approximately at the ages of 13 and 14, Mr. Greene began abusing alcohol and marijuana. *Id.* ¶¶ 65-66. Over the course of the following years, that abuse escalated to include regular use of other illegal substances, including cocaine, Percocet and heroin. *Id.* ¶¶ 67-70. That substantial substance abuse continued until the date of his arrest in

---

[1] Prior to his arrest in connection with this matter, Mr. Greene had never participated in any formal substance abuse program. He had occasionally attempted to stop his substance abuse, but he would routinely relapse. PSR ¶ 71.

2

this case on November 1, 2018, shortly after Mr. Greene had turned twenty-one. *Id.* ¶ 65. With the benefit of hindsight, and due in part to his recent experience in treatment, Mr. Greene has acknowledged that he used substances, at least in part, as a coping mechanism to deal with his challenging childhood memories. *Id.* ¶ 71.

At the time of his arrest, and as discussed in the PSR, Mr. Greene had moved out of his family home in Stoughton, and he was supporting his habits in large part through his involvement in the activity that is the subject of this case. *Id.* ¶ 20.

## MR. GREENE'S POST-ARREST CONDUCT

After he was arrested on November 1, 2018, Mr. Greene was held in federal custody for nearly three weeks. PSR ¶ 1. Thereafter, on November 19, 2019, Mr. Greene was released by Magistrate Judge Bowler to an inpatient program at SSTAR in Fall River, Massachusetts. *Id.* ¶ 71. Although he made some initial progress at SSTAR, Mr. Greene struggled to adapt to the demands of the SSTAR program. Among other challenges, Mr. Greene found that he was significantly younger than nearly all of the other inpatient program participants, and he had difficulty interacting with those older clients. *Id.* ¶ 63. He also found it difficult being separated from his family for the first time in his life. *Id.* At SSTAR, Mr. Greene grew impatient with the demands of the program, struggled at times to comply with its rules, and was reluctant to engage actively in therapy sessions. Although he completed the first phase of the SSTAR detoxification program, he was discharged from SSTAR in January 2019 before completing its "stepdown" program after he had a dispute with another resident. *Id.* ¶ 71.

Mr. Greene's abrupt discharge from SSTAR violated the terms of his pretrial release. *Id.* ¶¶ 1, 4. Accordingly, he was returned to federal custody, where he was held for approximately one week. *Id.* On January 16, 2019, due in no small part to the willingness of the United States

Probation Office to continue working with Mr. Greene, Magistrate Judge Bowler agreed to give Mr. Greene a second chance—allowing Mr. Greene to be released into another inpatient program, this time at Coles Place in Springfield, Massachusetts. *Id.* ¶¶ 1, 4, 71. Although Mr. Greene initially continued to struggle with the demands of this second inpatient program, by March 2019, he began becoming more engaged in his treatment—actively seeking a sponsor and working "to more deeply understand his addiction." *Id.* ¶ 71. This time, Mr. Greene was able to successfully complete the full three-month inpatient program. *Id.* He followed that inpatient program with the successful completion of a one-month outpatient program at Gosnold, Inc. in Stoughton. *Id.* ¶ 72.

In April 2019, bolstered in part by his success at Coles Place, Mr. Greene applied to participate in this Court's R.I.S.E. Program. On May 9, 2019, after receiving a recommendation from the District of Massachusetts R.I.S.E. Committee, this Court approved Mr. Greene's participation in the Program. *Id.* ¶ 5.[2] Since that time, over the course of the past year, Mr. Greene has been receiving regular mental health and substance abuse counseling services, has participated in a weekly Early Recovery Group at Gosnold, has regularly attended AA/NA meetings, and has been involved in the United States Probation Office's Interactive Journaling programs. *Id.* ¶ 62. He has also regularly participated in the monthly R.I.S.E. Program meetings conducted by Chief Magistrate Judge Hennessy in Worcester. To date, Mr. Greene has not failed any drug tests. *Id.* ¶ 4.

During the course of his participation in the R.I.S.E. program, Mr. Greene has also taken positive steps towards mastering a professional skill. In September 2019, he enrolled in a year-

---

[2] The R.I.S.E. Program is a program designed for individuals who have pled guilty and are under pretrial supervision prior to sentencing. The program is intended "to promote rehabilitation, productive behavior, and meaningful acceptance of responsibility." PSR ¶ 5.

long program at the Massachusetts School of Barbering. *Id.* ¶ 74. After a three-month interruption due to the COVID-19 crisis, he is expecting to resume his barbering program on June 10, 2020, shortly before the sentencing hearing in this case. Mr. Greene has discovered that he is talented at cutting hair, and he is hopeful that he will obtain his barbering license in the near future and that he will be able to find gainful employment as a barber. *Id.*

Mr. Greene's comments in the PSR reflect the significant personal growth that he has undergone over the course of the past year. He says that "the programs were difficult in the beginning," but that he is now "grateful for what happened and the programming he has participated in, as these experiences have changed his life." *Id.* ¶ 63. He had a particularly positive reaction to the Restorative Justice workshop—a program that puts its participants in direct contact with individuals who have been adversely impacted by criminal activity. *Id.* Perhaps most importantly, Mr. Greene has become more self-aware of the "triggers" that have contributed to his substance abuse. *Id.* ¶ 71. Mr. Greene feels that "he is not the same person he was" at the time of his arrest. *Id.*

The various letters submitted to this Court by Mr. Greene's family and friends attest to the positive transformation that Mr. Greene has made over the course of the past eighteen months. His girlfriend, Beliza Resende, states how Mr. Greene has grown "as a person," and has "inspired" her to get her own life back on track. *See* Letters of Support at Ex. B. His cousin Annette Conrad states that she has seen "drastic changes in Joseph for the better" over the past few years, including that he "is spending more time with his family and seems happy to do so." *See id.* at Ex. D. Another cousin, Katelyn Arsenault states that "he has made some progress toward change in his young life." *Id.* at Ex. F. Finally, his aunt, Kerry Greene, explains how, over the course of the past year, she has watched Mr. Greene transform from someone who was

on "the road to destruction," into a young man who is now "on a road to redemption." *Id.* at Ex. A. Ms. Greene explains that "Joseph has become a person that I can count on, and be proud of." *Id.*

On May 28, 2020, during a virtual proceeding conducted by Chief Magistrate Judge Hennessy, Mr. Greene graduated from the R.I.S.E. Program. During that proceeding, Mr. Greene's Probation Officer acknowledged that, in early 2019, she had significant doubts about Mr. Greene's ability to make it through the course of the program. When addressing Chief Magistrate Judge Hennessy at that same proceeding, Mr. Greene acknowledged that the program had been challenging to him at times, but he noted that he had begun to experience the benefits of his active participation and his newfound sobriety and he encouraged the other participants in the program to stay the course. Above all, Mr. Greene expressed gratitude for the fact that, over the course of the past year, he has regained the trust of his family—something he had lost during the period prior to his arrest in this case.

## THE OFFENSE CONDUCT

The offense conduct that is the subject of the Indictment in this case is described in ¶¶ 8-20. Although the broader conspiracy charged in this matter apparently involved wide-ranging conduct spanning multiple years and numerous defendants, *see* PSR ¶¶ 6, 8-14, Mr. Greene's role in the conspiracy was solely as a street-level drug trafficker during the final three weeks of the four-and-one-half year period charged in the Indictment. *Id.* ¶ 14. Those facts demonstrate that during October 2018, after introducing himself to another member of the charged conspiracy, Mr. Greene made a series of purchases of crack and powder cocaine and other illegal substances for the purpose of selling those substances to potential buyers. *Id.* ¶¶ 14-19. Mr.

Greene's conduct was captured by law enforcement on intercepted telephone calls and other surveillance. *Id.*

Mr. Greene was arrested on November 1, 2018 and was subsequently charged, along with nine other individuals, in an Indictment alleging that he participated in a conspiracy to distribute a range of controlled substances in violation of 21 U.S.C. § 846. *Id.* ¶ 2. Mr. Greene was not named in the other eleven counts of that Indictment, which included multiple additional charges unrelated to his conduct. *Id.*

On May 8, 2019, Mr. Greene pled guilty to the single conspiracy count with which he had been charged. *See* Docket Entry ("DE") #155. After approving Mr. Greene's participation in the R.I.S.E. Program, the Court initially set his sentencing for August 13, 2019. *Id.* After several continuances,[3] the Court has scheduled his sentencing for June 15, 2020. DE #405.

## THE SENTENCING GUIDELINES

There is no dispute regarding the proper calculation of the sentencing guidelines as to Mr. Greene in this case. Using the converted drug weight calculations set forth in the guidelines, Mr. Greene's base offense level is **16**. PSR ¶¶27, 32. After a three-point reduction resulting from his prompt acceptance of responsibility, Mr. Greene's total offense level is **13**. *Id.* ¶¶ 33-36. There is also no dispute that Mr. Greene, who has no prior convictions and therefore no criminal history points, has a criminal history that places him in **Category I**. *Id.* ¶¶ 41-42.

Accordingly, with a total offense level of **13** and a criminal history of Category I, Mr. Greene's applicable sentencing guideline range is **12 to 18 months**. *Id.* ¶ 87.

---

[3]The first two continuances were based upon Mr. Greene's continued successful participation in the R.I.S.E. Program. *See* DE 200, 276. The most recent continuance was based upon the disruption to this Court's schedule caused by the COVID-19 pandemic. *See* DE 405. Mr. Greene had hoped to appear in person for his sentencing to address the Court, but in light of the ongoing pandemic, he has waived his right to appear in person for the sentencing proceeding and has agreed to proceed via teleconference.

## CONSIDERATION OF THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a).

There is no doubt that this Court has the discretion to impose a sentence that varies from the sentencing range reflected by the sentencing guidelines calculations. *United States v. Gall*, 552 U.S. 38, 51-52 (2007); *United States v. Martin*, 520 F.3d 87, 90-91 (1st Cir. 2008). While the sentencing guidelines calculation discussed above is a factor that must be calculated and considered in connection with a defendant's sentencing, *see Martin*, 520 F.3d at 91; *see also* 18 U.S.C. § 3553(a)(4-5), it is far from the only relevant factor for this Court to consider. Other important factors include consideration of the nature and characteristics of the defendant, the need for the sentence to provide the defendant with correctional treatment in the most effective manner, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(1-3, 6).[4] Accordingly, this Court may appropriately vary from the guideline sentencing range in order to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in the statute. *Id.* Indeed, once the Court has calculated the guidelines sentencing range, the sentencing process becomes "broad, open-ended, and significantly discretionary." *Martin*, 520 F.3d at 92 (citing *United States v. Vega-Santiago*, 519 F.3d 14, 20 (1st Cir, 2008)).

In this case, Mr. Greene respectfully requests that this Court impose a sentence of three-years of supervised release, subject to appropriate conditions that will allow and encourage Mr. Greene to continue to benefit from the ongoing support of the United States Probation Office during that proposed term of supervised release. Indeed, any further incarceration of Mr. Greene at this point in his young life would serve only to threaten the substantial progress that he has made towards a life of stability and sobriety during the course of his pretrial release. To be sure,

---

[4] The "need to provide restitution to any victims," *see* 18 U.S.C. § 3553(a)(7), is not an issue in this case. *See* PSR ¶¶ 116-17.

Mr. Greene's successful completion of the R.I.S.E. Program does not entitle Mr. Greene to any particular benefit in connection with this sentencing proceeding. His conduct during that program, however, including his slow but steady personal growth over the course of the program, is among the factors that the Court should consider when fashioning a sentence here. *See* 18 U.S.C. § 3553(a)(1) (referencing the "history and characteristics of the defendant"). Also important here is the fact that a term of supervisory release would allow him to continue with appropriate treatment with the support of the Probation Office, while also allowing him to continue to pursue his barbering license, an important next step on his path to becoming a more productive and self-reliant citizen. *See* 18 U.S.C. § 3553(a)(2)(D) (noting the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

Given his current age (22 years old) and his lack of criminal history, Mr. Greene is hopeful that, with the continued assistance of the Probation Office during the term of his supervised release, as well as the powerful ongoing love and support he receives from his family, he will be able to continue on the path towards rebuilding his life and becoming a reliable and trustworthy member of his community. A sentence of three years of supervised release would give him an opportunity to do just that.

## CONCLUSION

For all the foregoing reasons, Mr. Greene respectfully requests that this Court impose upon him a sentence of three years of supervised release, with appropriate conditions that will continue to assist him in his path towards recovery. Finally, in light of his inability to pay any

9

fine,[5] Mr. Greene respectfully requests that this Court decline to impose any fine in connection with this case, other than the mandatory $100 special assessment.

                                      Respectfully submitted,

                                      Defendant Joseph Greene
                                      By his attorney,

                                      /s/ Daniel J. Cloherty
                                      Daniel J. Cloherty (BBO# 565772)
                                      Todd & Weld LLP
                                      One Federal Street
                                      Boston, MA  02110
                                      (617) 720-2626
                                      dcloherty@toddweld.com

Dated: June 10, 2020

---

[5] Undersigned counsel acknowledges that Mr. Greene's financial information was not submitted to the Probation Office in time for inclusion in the initial draft PSR.  *See* PSR ¶ 83.  As undersigned counsel subsequently explained to the Probation Officer, that error was the fault of undersigned counsel, *not* Mr. Greene.  As requested in the PSR, Mr. Greene will submit his financial information for the Court's review and consideration prior to sentencing.  *Id.*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I served a true copy of the foregoing document upon all parties with an interest in this matter by electronically filing through this Court's CM/ECF filing system this 10th day of June 2020.

                                        /s/ Daniel J. Cloherty
                                        Daniel J. Cloherty